UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ALEXANDER P.,[1]

                           Plaintiff,                    DECISION AND ORDER

-vs-

                                                   1:19-CV-1361 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

_____

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Mar. 31, 2020, ECF No. 9; Def.'s Mot., June 29, 2020, ECF No. 13. Plaintiff argues that the Commissioner's denial of his application for DIB and SSI benefits should be reversed because the Commissioner's decision is not supported by substantial evidence. The Commissioner disputes Plaintiff's contentions, and maintains that the ALJ's decision is free of legal error and supported by substantial evidence. For the reasons set forth below,

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

Plaintiff's motion for judgment on the pleadings [ECF No. 9] is denied, the Commissioner's motion [ECF No. 13] is granted, and the Clerk of Court is directed to close this case.

## LEGAL STANDARD

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for a special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999).

At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff protectively filed his DIB and SSI applications on April 21, 2016, alleging an onset date of August 12, 2015. Transcript ("Tr."), 184–187, Dec. 31, 2019, ECF No. 6. In his "Disability Report," Plaintiff reported that his ability to work was limited by anxiety, manic panic disorder, and diabetes. Tr. 207. On July 21, 2016, the Commissioner notified Plaintiff of the determination that Plaintiff was not disabled, and that he did not qualify for either DIB or SSI benefits. Tr. 103. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 114.

Plaintiff's request was approved, and the hearing was held in Buffalo, New York on July 10, 2018. Tr. 36. Plaintiff appeared with his counsel, and the ALJ received testimony from Plaintiff, Plaintiff's sister, and an impartial vocational expert. Tr. 38–78. At the hearing, the ALJ asked Plaintiff what has prevented him from working, and Plaintiff responded as follows:

> [Plaintiff:] Well,. . . the PTSD flashbacks, which happen whenever I'm traveling . . . . [and a]nxiety, if I'm doing a task too easy my – I get around in my own head and I can – have breakdowns and pass out. If a task is too hard . . . I get overwhelmed, anxiety. And – and then passed

> out [sic] or get sick to my stomach . . . .
>
> . . . [A]nd then I still had a number of fugue states[2] since then . . . . [T]hat's all very terrifying stuff to go through to not remember how you got where you got . . . .

Tr. 50–51. Plaintiff also indicated that he has panic attacks "[o]nce a week at least, if not more." Tr. 57. Plaintiff's sister confirmed Plaintiff's fugue states, testifying that they occurred at least monthly, but that "[i]t really depends how much stress he's under. The more stress, the worse." Tr. 70.

In addition, Plaintiff testified that he is in constant pain all over his body, and struggles with sleeping, with his short-term memory, maintaining concentration and attention, understanding instructions, making decisions, and relating to other people. Tr. 51–55. He never gets together with friends, only goes outside once every few days, and has trouble shopping on his own due to his anxiety. Tr. 55–59. Nevertheless, Plaintiff testified that he is able to prepare simple meals for himself, help his sister with minimal household chores, do his own laundry, and spend up to ten hours each day on the computer reading about politics on Facebook and watching entertainment videos on YouTube. Tr. 56–59.

---

[2] When asked by his counsel to clarify what he meant by "fugue state," Plaintiff offered the following explanation: "[A] circumstance where I can't remember what happened, usually a reaction to stress or anxiety or some sort of negative occurrence . . . . And then typically I know that it happened because I'm somewhere else." Tr. 60–61. When asked to elaborate, he described a fugue state he entered while working as a table dealer at a casino: "[W]hat they told me is that I just tapped off my table and walked away. And wandered off, out the front door of the casino . . . the management was chasing me down outside . . . ." Tr. 61. The most egregious example Plaintiff cited came not at work, but one weekend during which he came out of his fugue state having somehow travelled from New York to West Virginia. Tr. 62. When questioned further by his counsel whether a fugue state could be described as "like sleepwalking . . . when you're not cognizant but your body's [acting]," Plaintiff confirmed, "that's a pretty good description." Tr. 62.

4

After reviewing Plaintiff's work history, the vocational expert (the "VE") testified that Plaintiff's past relevant work could be classified as a telephone solicitor, order clerk, and insurance sales agent. Tr. 72–73. The ALJ presented the VE with a hypothetical involving a person of Plaintiff's age, education and work experience, no exertional limits, and non-exertional limits of simple routine, repetitive tasks, simple work-related decisions, and occasional interaction with supervisors, coworkers and the general public. Tr. 73. The VE testified that the hypothetical individual could not perform Plaintiff's past relevant work, but that he could perform such jobs as laundry laborer, hand packager, and industrial cleaner. Tr. 73–74.

In his decision on October 1, 2018 denying DIB and SSI benefits to Plaintiff, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through December 31, 2020. Tr. 21. At step one of the five-step evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 12, 2015. Tr. 21. At step two, the ALJ determined that Plaintiff has three severe impairments: anxiety disorder, depressive disorder, and post-traumatic stress disorder. Tr. 21. The ALJ also found that Plaintiff's diabetes mellitus is non-severe. Tr. 22. At step three of the process, the ALJ utilized the "special technique" required by 20 C.F.R. § 404.1520a,[3] and

---

[3] The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with detailed guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimaint's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 §

5

determined that Plaintiff's impairments, considered either individually or in combination, do not meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 22.

Then, before proceeding to step four, the ALJ made a determination of Plaintiff's residual functional capacity. "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945. After careful consideration of the entire record, the ALJ determined that Plaintiff had the RFC to perform the full range of work at all exertional levels but with the following non-exertional limitations:

> [Plaintiff] can perform simple, routine, repetitive tasks . . . . make simple, work-related decisions . . . . [and] have occasional interaction with supervisors, coworkers and the general public.

Tr. 24.

Based on this RFC, and on the testimony of the impartial VE, at step four the ALJ found that Plaintiff is unable to perform his past relevant work as a telephone solicitor, order clerk, or insurance sales agent. Tr. 28–29. However, the ALJ determined at step five that – considering Plaintiff's age, education, work experience, and RFC – he could make a successful adjustment to work at other jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1569, § 416.969.

---

12.00A(2)(a). "Paragraph B" criteria are the four functional areas of (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). "Paragraph C" criteria are used to evaluate whether a claimant has a "serious and persistent" mental disorder.

Relying on the VE's testimony, the ALJ found that a person of Plaintiff's age, education, work experience and RFC can perform such jobs in the national economy as a laundry laborer, hand packager, and industrial cleaner. Tr. 30. Hence, the ALJ found Plaintiff *was not* disabled for the purposes of DIB or SSI. Tr. 30.

On August 12, 2019, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## DISCUSSION

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). It is not the reviewing court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154

(2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). To determine whether a finding, inference or conclusion is supported by substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

Plaintiff maintains that the ALJ's RFC determination is not supported by substantial evidence because the ALJ (1) gave more weight to the non-examining state agency psychological consultant's opinion over the consulting examiner's opinion; (2) did not base the RFC on the opinion evidence in the record; and (3) failed to clarify the consultative examiner's "vague opinion" regarding the interference of Plaintiff's "fugue states" with his daily functioning. Pl. Mem. of Law, 1, Mar. 31, 2020, ECF No. 9-1. The Court finds no merit in Plaintiff's arguments.

<u>The Weight of Dr. Dipeolu's Opinion Evidence</u>

In his decision, the ALJ stated that "the record does not contain any opinions

8

from treating or examining physicians that identify any objective medical findings to support a conclusion indicating that the claimant was disabled . . . ." Tr. 27. Plaintiff does not dispute this statement, but rather argues that it was error for the ALJ to give greater weight to the opinion of non-examining state agency psychological consultant, A. Dipeolu, Ph.D., over the opinion of Susan Santarpia, Ph.D., who performed a single consultative examination of Plaintiff in June 2016. Pl. Mem. of Law at 9.

Where the record is devoid of opinions from a treating source that are entitled to controlling weight, 20 C.F.R. § 404.1527(c)(1)–(6) requires the ALJ to consider the following factors in weighing each medical opinion: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, (6) other factors, such as the expert's level of understanding of the Commissioner's disability programs. Provided the opinion of a non-examining source is supported by evidence in the record and is consistent with the applicable regulations, the opinion of the non-examining source may override the opinions of treating or examining sources. *See Monette v. Colvin*, 654 F. App'x 516, 518 (2d Cir. 2016) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995)). *See also Kenneth W. v. Comm'r of Soc. Sec.*, No. 1:19-CV-0825 (WBC), 2020 WL 7385251, at *3 (W.D.N.Y. Dec. 16, 2020) (collecting cases in support of the proposition that "the regulations recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose opinions may constitute
9

substantial evidence in support of residual functional capacity findings.").

In the present case, the ALJ properly considered the factors required by 20 C.F.R. § 404.1527(c)(1)–(6), and his findings are supported by substantial evidence. The ALJ gave "significant weight" to the opinion of state agency psychological consultant Dr. Dipeolu, who opined in July 2016 that Plaintiff's mental impairments warranted moderate limitations. Tr. 27. In doing so, the ALJ noted that Dr. Dipeolu had not directly treated or examined Plaintiff (§ 404.1527(c)(1)–(2)), but that he is an acceptable medical source, is fully familiar with the Social Security regulations regarding disability (§ 404.1527(c)(6)), had the benefit of reviewing Plaintiff's longitudinal record (§ 404.1527(c)(6)), and rendered an opinion consistent with the medical evidence of record (§ 404.1527(c)(3)–(4)). Tr. 27.

Dr. Dipeolu's conclusion is consistent with the evidence from Plaintiff's psychiatric treatment provider, the Dale Association. For instance, Nurse Practitioner Obot[4] and Dr. Misir from the Dale Association note Plaintiff's reports of PTSD and anxiety attacks, and occasional depressed mood. Nevertheless, they also consistently observe Plaintiff to be "alert and oriented to all spheres;" "in no acute distress;" "well-groomed;" with "linear, logical, and goal-directed" thought processes; memory and cognition "grossly intact;" "fair" judgment and insight; and "psychiatrically appropriate for continued outpatient management." *See, e.g.,* Tr. 26,

---

[4] A nurse practitioner is not an "acceptable medical source" under the regulations. 20 C.F.R. § 404.1502(a). Nevertheless, a nurse practitioner's opinion "may be considered as to the severity of plaintiff's impairment and how it affects his ability to work . . . ." *Lovell v. Colvin*, 137 F. Supp.3d 347, 353 (W.D.N.Y. 2015).

10

564, 568, 575, 598.

The ALJ's treatment of the opinion from Susan Santarpia, Ph.D., who saw Plaintiff for a single consultative examination on June 27, 2016, was more nuanced. Dr. Santarpia concluded that Plaintiff "presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others and appropriately deal with stress." Tr. 478. She also found that Plaintiff had "moderate impairment . . . performing complex tasks independently . . . . [and] difficulties . . . caused by dissociative fugue states." Tr. 478. The ALJ gave great weight to Dr. Santarpia's opinion that Plaintiff has moderate limitations in performing complex tasks, and that his fugue states may interfere with his ability to function on a daily basis. Tr. 27. However, the ALJ gave less weight to Dr. Santarpia's opinion with respect to other limitations, because the ALJ found that the objective medical evidence in the record indicated greater limitations than those suggested by Dr. Santarpia. Tr. 27.

To begin with, an ALJ may accept parts of a doctor's opinion and reject others. *Veino v. Barnhart*, 312 F.3d 578, 588–89 (2d Cir. 2002). Furthermore, a careful review of the ALJ's decision and the full record reveals that here, too, the ALJ properly considered the factors required by 20 C.F.R. § 404.1527(c)(1)–(6), and his findings are supported by substantial evidence. With respect to the § 404.1527(c) factors, the ALJ acknowledged that Dr. Santarpia personally examined the Plaintiff (§

11

404.1527(c)(1)), but based her opinion on only one occasion and not a longitudinal treatment history (§ 404.1527(c)(2) and (6)). Tr. 28. The ALJ also accorded weight to the various parts of Dr. Santarpia's opinion based on its consistency or inconsistency with the objective evidence in the record (§ 404.1527(c)(4)). For example, although Dr. Santarpia found that Plaintiff presents as having the ability to adequately deal with others (Tr. 478), Dr. Dipeolu concluded – after review of the longitudinal record, including Dr. Santarpia's consultative exam report – that Plaintiff had difficulty relating to others (Tr. 95).

Accordingly, the Court finds that the ALJ did not err by giving greater weight to Dr. Dipeolu's opinion than Dr. Santarpia's. *See, e.g., Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (cautioning that ALJs should not rely heavily on the findings of consultative physicians after a single examination in the context of mental illness where "a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health.").

The ALJ's RFC Determination

Plaintiff also maintains that the ALJ did not base his RFC determination on the opinion evidence of Dr. Dipeolu and Dr. Santarpia. In particular, Plaintiff points out that whereas Dr. Dipeolu's opinion was that Plaintiff can have only "superficial" contact with others, the ALJ's RFC found that Plaintiff can have "occasional" contact but did not explain why he did not incorporate Dr. Dipeolu's limitations. Additionally, he states that the ALJ's treatment of Dr. Santarpia's opinion evidence was improper

12

"selective cherry-picking." Pl. Mem. of Law at 10–11.

The ALJ makes an RFC determination only after "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184 at *1 (S.S.A. July 2, 1996). In addition to a claimant's medical history, including consultative exams if necessary, the ALJ considers "any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations . . . . [as well as] descriptions and observations of [the claimant's] . . . including limitations that result from [claimant's] symptoms, such as pain, provided by [claimant, claimant's] family, neighbors, friends, or other persons. 20 C.F.R. § 404.1545(a)(3). In other words, an ALJ's assessment of a claimant's RFC need not perfectly correspond with any of the medical opinions cited in his decision, so long as the RFC determination is consistent with the record as a whole. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

In the present case, despite Dr. Dipeolu's opinion that Plaintiff can have only superficial contact with others, there is substantial evidence in the record to support the RFC determination that Plaintiff is capable of occasional contact. Indeed, "many courts have found that where, as here, an ALJ properly gave considerable weight to a medical opinion stating a claimant's ability to handle brief and superficial contact, an RFC containing a limitation to 'occasional interaction' is supported by substantial

evidence." *Ward v. Comm'r of Soc. Sec.*, No. 18-CV-1317-FPG, 2020 WL 3035850, at *3 (W.D.N.Y. June 5, 2020) (collecting cases). Further, Plaintiff's treatment records from the Dale Association and elsewhere indicate that he "was polite and cooperative and made appropriate eye contact" in the vast majority of his office visits. *See, e.g.,* Tr. 26, 590. Dr. Santarpia, too, noted that Plaintiff was cooperative, made appropriate eye contact, and "endorses socialization with friends and family . . . ." Tr. 477–478. It may be that the ALJ could have reached a different conclusion based on Plaintiff's medical records, but we defer to the ALJ's disability determination when it is supported by substantial evidence. *Smith v. Berryhill*, 740 F. App'x. 721, 725 (2d Cir. 2018) (citing *Veino*, 312 F.3d at 588–89).

With respect to Plaintiff's contention that the ALJ was "cherry-picking" from Dr. Santarpia's opinion, the Court disagrees. It is "not require[d] that [the ALJ] . . . have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Similarly, "it is not required that the RFC assessment 'perfectly correspond' with [a doctor's] opinion." *Thomas v. Berryhill*, 337 F. Supp.3d 235, 238 (W.D.N.Y. 2018) (quoting, *inter alia*, *Matta*, 508 F. App'x. at 56). "What is required is that the ALJ explain the bases for his findings with sufficient specificity to permit meaningful review." *Id.* Here, the Court finds that the ALJ sufficiently explained the basis for his RFC determination, which was supported by substantial evidence in the record. *See, e.g.,* Tr. 24–28.

14

Dr. Santarpia's "Vague" Opinion

Lastly, Plaintiff maintains the ALJ erred by failing to seek clarification of Dr. Santarpia's "vague" opinion that "[d]ifficulties are caused by dissociative fugue states . . . [and t]he results of the evaluation appear to be consistent with psychiatric problems that, at times, may interfere with the claimant's ability to function on a daily basis." Tr. 478. Plaintiff argues that these statements by Dr. Santarpia do not "give any indication of what Plaintiff's functional limitations actually [are] . . . . [and] implicate some degree of off-task time that would affect Plaintiff's performance across all functions in a work environment." Pl. Mem. of Law at 11. Without clarification of this vague opinion, Plaintiff asserts, Dr. Santarpia's opinion was "essentially useless" for crafting an RFC. Pl. Mem. of Law at 11.

It is well-settled that the ALJ has an affirmative duty to develop the medical record and seek out further information where evidentiary gaps exist. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.1999). Here, however, Dr. Santarpia's opinion did not create a gap in the record. Rather, Dr. Santarpia made clear assessments – most of which were consistent with the RFC determination – on a function-by-function basis for understanding directions, performing simple and complex tasks, maintaining attention and concentration, maintaining a schedule, learning new tasks, making decisions, relating with others, and dealing with stress. Tr. 478. In addition, the ALJ thoroughly addressed the well-developed evidence in the record, including Plaintiff's treatment records from the Dale Association from 2015 to 2018,

15

the opinion evidence from Dr. Santarpia and state agency psychological consultant Dr. Dipeolu, treatment records from Plaintiff's primary care physician, and Plaintiff's own statements with respect to his limitations. Tr. 24–28. The ALJ's RFC determination was, therefore, supported by substantial evidence. *See, e.g., Kinder v. Colvin*, No. 13-CV-06368 MAT, 2014 WL 4184820, at \*5 (W.D.N.Y. Aug. 21, 2014). *See also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) ("claimants bear the general burden of proving that they are disabled").

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 9] is denied, the Commissioner's motion [ECF No. 13] is granted, and the Clerk of Court is directed to close this case.

DATED: March 4, 2021
Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge